# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 20-1141V
UNPUBLISHED

| | |
|---|---|
| ELIZABETH MERWITZ,<br><br>               Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>               Respondent. | Chief Special Master Corcoran<br><br>Filed: October 11, 2022<br><br>Special Processing Unit (SPU); Entitlement to Compensation; Table Injury; Decision Awarding Damages; Pain and Suffering; Influenza (Flu) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |

*Amy A. Senerth*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Christine Mary Becer*, U.S. Department of Justice, Washington, DC, for Respondent.

### RULING ON ENTITLEMENT AND DECISION AWARDING DAMAGES[1]

On September 3, 2020, Elizabeth Merwitz filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that she suffered a right shoulder injury related to vaccine administration ("SIRVA"), as defined in the Vaccine Injury Table, after receiving an influenza ("flu") vaccine on December 27, 2018. Petition at 1, ¶¶ 2, 19. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

---

[1] Although I have not formally designated this Decision for publication, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002, because it contains a reasoned explanation for my determination. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons described below, I find that Petitioner is entitled to compensation, and I award damages in the amount **$50,000.00**, **representing her actual pain and suffering.**

I. **Relevant Procedural History**

Along with her petition, Ms. Merwitz filed the medical records required by the Vaccine Act. Exhibits 1-6; *see* Section 11(c). On September 11, 2020, the case was activated and assigned to the SPU (OSM's adjudicatory system for attempting to resolve cases deemed likely to settle). ECF No. 8. A year later, on October 8, 2021, Respondent indicated that he was willing to engage in settlement discussions. ECF No. 16. By January 18, 2022, however, the parties had reached an impasse. ECF No. 20.

On March 7, 2022, Respondent filed his Rule 4(c) Report, setting forth his objections to compensation. ECF No. 21. Specifically, Respondent maintains Petitioner has failed to provide sufficient evidence to show her injury meets the Table SIRVA definition because she has failed to establish that the onset of her right shoulder pain occurred within 48 hours of vaccination and that she suffered any limitations to her range of motion ("ROM"). *Id.* at 3-4.

During a status conference held on August 5, 2022, the parties estimated they could file simultaneous briefing regarding the issues of entitlement and damages (assuming I were to find Petitioner entitled to compensation). *See* Order, issued Aug. 5, 2022, ECF No. 23. On September 22, 2022, the parties filed their written arguments. Petitioner's Brief in Support of Entitlement and Damages ("Pet. Brief), ECF No. 24; Respondent's Brief on Entitlement and Damages ("Res. Brief"), ECF No. 25. Neither party has filed a responsive brief.

The matter is now ripe for adjudication.

II. **Factual Findings and Ruling on Entitlement**

A. **Legal Standards**

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding his claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Hum. Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Contemporaneous medical records are presumed to be accurate. *See Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Hum. Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Hum. Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying QAI are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological

---

[3] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* Section 11(c)(1)(A)(B)(D)(E).

abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

(i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

(ii) Pain occurs within the specified time frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10) (2017).

### B. Factual Finding Regarding QAI Criteria for Table SIRVA

#### 1. Pain Onset

Respondent contests the second SIRVA Table claim criterion - whether the onset of Petitioner's pain occurred within 48 hours of vaccination. Res. Brief at 4; *see* 42 C.F.R. § 100.3(c)(10)(ii); *see also* 42 C.F.R. § 100.3(a)(XIV)(B) (requiring the first symptom or manifestation of onset within 48 hours of vaccination for a SIRVA injury following receipt of a flu vaccine). Citing the three-month delay before Petitioner sought medical treatment and her description of pain "since" her flu shot, Respondent argues "it is not clear that [Petitioner's] pain began within forty-eight hours." Res. Brief at 4.

Delay in seeking treatment for a SIRVA injury is not by itself evidence that onset of pain was not immediate. Indeed, as I have previously stated in numerous decisions and rulings, "it is often common for a SIRVA petitioner to delay treatment, thinking his/her injury will resolve on its own." *Bergstrom v. Sec'y of Health & Hum. Servs.,* No. 19-0784V, 2020 WL 8373365, at *3 (Fed. Cl. Spec. Mstr. Dec. 4, 2020). Additionally, Petitioner was not seen during this three-month period for any other condition or illness. Such intervening evidence - which can collaborate or undermine a petitioner's claim, is totally absent here.

Furthermore, there is reasonable record evidence of onset consistent with this Table requirement. When Petitioner sought treatment for her right shoulder pain, she

4

consistently reported an immediate onset. The Federal Circuit has stated that "[m]edical records, in general, warrant consideration as trustworthy evidence . . . [as they] contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions." *Cucuras*, 993 F.2d at 1528 (emphasis added). Thus, the Circuit has instructed that greater weight should be accorded to this information even when the information is provided by Petitioner.

Thus, when first treated by her orthopedist on March 28, 2019, Petitioner indicated that "she got a flu injection in December and has been having pain ever since." Exhibit 2 at 299. At her initial physical therapy ("PT") evaluation on May 13, 2019, Petitioner reported that "[i]n December, she had a flu shot and got immediate sharp pain in her right shoulder," adding "[t]he pain never went away." *Id.* at 248.

Emphasizing Petitioner's use of the term "since," Respondent appears to argue that the descriptions Petitioner provides are too vague to establish onset within 48 hours of vaccination. But that characterization is unpersuasive. Definitions of the word "since" include the following, which support an immediate pain onset: 1) "from a definite past time until now" and 2) "from a particular time in the past until a later time."[4] Additionally, the full descriptions provided by Petitioner clearly establishes an immediate onset for her pain. At her initial PT visit, Petitioner describes her shoulder pain as "immediate." Exhibit 2 at 248. And there is a dearth of evidence supporting a later pain onset.

All of the above amounts to preponderant evidence establishing Petitioner likely suffered right shoulder pain immediately upon vaccination. The lack of a single contemporaneous item of evidence *specifically* identifying onset in 48 hours is simply not a basis for finding against Petitioner, since the other evidence taken together supports a favorable finding. Petitioner has thus satisfied the second criterion for a Table SIRVA injury.

### 2. Existence of ROM

Respondent also argues that Petitioner has not met the Table criteria for SIRVA because "physical exams of her right shoulder consistently showed normal range of motion." Res. Brief at 4. He maintains that an expert report is needed "to support the contention that [P]etitioner could have a SIRVA injury even though she consistently had a normal range of motion in her shoulder." *Id.* at 4. n1.

---

[4] These definitions can be viewed at the Merriam-Webster and Cambridge Dictionary. *See* (www.merriam-webster.com/dictionary/since; https://dictionary.cambridge.org/us/dictionary/english/since (last visited on Oct. 3, 2022).

Although I and my colleagues have previously discussed whether the existence of a limited ROM is a requirement of a Table SIRVA injury,[5] I am not aware of any definitive ruling on this issue.[6] And, as in the *Dawson* ruling, I need not address the issue here because I find there is sufficient evidence to show Petitioner suffered at least some mild reduction in her ROM.

The medical records show that, when she first sought treatment for her right shoulder pain on March 28th, Petitioner exhibited full ROM. Exhibit 2 at 299. However, by her initial PT evaluation on May 13th, Petitioner was observed to have mild limitations in her active ROM – assessed as 160 degrees of flexion, 45 degrees of extension, and 160 degrees of abduction. Exhibit 2 at 249. And "[t]o return full ROM" was listed as a PT goal. *Id.* By her discharge from PT on June 25th, Petitioner was again observed to have full active ROM – assessed as 180 degrees of flexion, 45 degrees of extension, and 180 degrees of abduction. *Id.* at 126.

Because the SIRVA QAI contains no requirement regarding the *degree* of severity and duration of any reduced ROM, the mildly limited ROM Petitioner experienced in her right shoulder from May through June is sufficient to counter Respondent's contention that Petitioner exhibited full ROM throughout her claimed SIRVA injury. At most, it counsels against a large damages award with respect to pain and suffering.

### 3. Other QAI Criteria

Respondent does not dispute any other Table SIRVA requirements, and the record contains sufficient evidence showing Petitioner has satisfied the other QAI criteria. *See* 42 C.F.R. § 100.3(c)(10)(i) & (iii)-(iv). A thorough review of the record in this case does not reveal a prior or current condition or abnormality which would explain Petitioner's condition or pain and limited range of motion ("ROM") other than in Petitioner's injured

---

[5] *See Dawson v. Sec'y of Health & Hum. Servs.,* No. 19-0278V, 2021 WL 5774655 (Fed. Cl. Spec. Mstr. Nov. 4, 2021) (finding sufficient evidence of limited ROM); *Portee v. Sec'y of Health & Hum. Servs.,* No. 16-1552V, 2018 WL 5284599 (Fed. Cl. Spec. Mstr. Sept. 14, 2018) (determining limited ROM manifesting *within 48 hours* is not required for a Table SIRVA).

[6] Limited ROM is mentioned twice in the SIRVA QAI. When defining SIRVA, the QAI indicates that "SIRVA manifests as shoulder pain *and* limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm." 42 C.F.R. § 100.3(c)(10) (emphasis added). Additionally, the third criterion requires that a petitioner's "[p]ain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered." 42 C.F.R. § 100.3(c)(10)(iii). As I discussed in *Dawson,* despite some language ambiguity, the first instance supports the premise that some limited ROM is needed to satisfy the Table SIRVA definition. *Dawson,* 2022 WL 5774655, at *2-3. However, the third criterion requires only that the reduced ROM be limited to the shoulder in which the vaccination was administered. *Id.* at *3.

right shoulder. Thus, all elements of a Table SIRVA claim have been preponderantly established.

### C. Other Requirements for Entitlement

Because Petitioner has satisfied the requirements of a Table SIRVA, she need not prove causation. Section 11(c)(1)(C). However, she must satisfy the other requirements of Section 11(c) regarding the vaccination received, the duration and severity of her injury, and the lack of other award or settlement. Section 11(c)(A), (B), and (D). Respondent does not dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence which fulfills these additional requirements.

## III.  Compensation to be Awarded

### A. Parties Arguments

In this case, Petitioner seeks only compensation for her pain and suffering. Characterizing her SIRVA Injury as mild to moderate and lasting over seven months, Petitioner seeks $75,000.00 for her pain and suffering. Pet. Brief at 8-9. She favorably compares the facts and circumstances in her case to those experienced by the petitioners in *Knauss, Kuhn,* and *Vinocur,* who received pain and suffering awards ranging from $60,000.00 to $70,000.00.[7] Pet. Brief at 10-12.

In contrast, Respondent asserts that Petitioner should receive the lesser amount of $32,500.00 for her pain and suffering. Res. Brief at 4-5. He characterizes Petitioner's SIRVA injury as mild and limited and Petitioner's three-month delay in seeking treatment as significant, but cites no comparable cases. *Id.*

### B. Legal Standards for Pain and Suffering Awards

In another recent decision, I discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussion in Sections II and III of *Friberg v. Sec'y of Health & Hum. Servs.*, No. 19-1727V, 2022 WL 3152827 (Fed. Cl. Spec. Mstr. July 6, 2022).

---

[7] *Knauss v. Sec'y of Health & Hum. Servs.,* No. 16-1372V, 2018 WL 3432906 (Fed. Cl. Spec. Mstr. May 23, 2018); *Kuhn v. Sec'y of Health & Hum. Servs.,* No. 18-0091V, 2020 WL 3750994 (Fed. Cl. Spec. Mstr. June 5, 2020); *Vinocur v. Sec'y of Health & Hum. Servs.,* No. 17-0598V, 2020 WL 1161173 (Fed. Cl. Spec. Mstr. Jan.31, 2020).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[8]

### C. Appropriate Compensation for Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact her awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury. In determining appropriate compensation for pain and suffering, I have carefully reviewed and taken into account the complete record in this case, including, but not limited to: Petitioner's medical records, filings, and all assertions made by the parties in written documents. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and relied upon my experience adjudicating these cases. However, my determination is ultimately based upon the specific circumstances of this case.

In this case, the medical records show that for approximately eight months – from late December 2018 to early August 2019, Petitioner – a thirty-one years old at the time of vaccination, suffered a shoulder injury involving mild to moderate and pain – often described as intermittent, and full ROM, except for some mild limitations experienced for several months. Exhibit 2 at 299-301, 285, 275-76, 248-49, 29 (descriptions of symptoms in chronological order). During this time, she received a steroid injection which provided two weeks of pain relief, began taking Meloxicam,[9] and attended 17 PT sessions over a three-month period. *Id.* at 299 (injection), 285 (pain relief for two weeks), 276, 285 (prescription and refill for Meloxicam), 34-271 (PT records). Performed on May 9th, an MRI showed no joint effusion or rotator cuff tear, but tendinitis and mild to moderate subacromial and subdeltoid bursitis. *Id.* at 275-76.

---

[8] *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

[9] Meloxicam is a nonsteroidal anti-inflammatory drug (NSAID) which reduces pain, swelling, and stiffness of the joints, often used to treat arthritis. *See* https://www.webmd.com/drugs/2/drug-911/meloxicam-oral/details (last visited Oct. 10, 2022).

When discharged from PT on July 22nd, Petitioner reported pain ranging between zero (described as stiffness) and two, was observed to have almost full ROM, and was noted to have met all goals. Exhibit 2 at 40-41. She was instructed to continue PT exercises at home. *Id.* at 40.

At her last orthopedic visit on August 1, 2019, Petitioner reported that "her shoulder has gotten much better with physical therapy," that "she has no real pain" but only a brittle feeling in her shoulder, that "she does not have exactly symmetrical range of motion," and that she continues to take her medication although she believes it doesn't help much. *Id.* at 29. Petitioner declined options of surgery and another steroid injection, opting instead to continue her medication.

Although there are some similarities between the facts and circumstances in Petitioner's case and the cases she cites, each has at least one significant difference which hinders any meaningful comparison. The *Kuhn* petitioner, for example, experienced severe initial pain which caused him to seek treatment at an urgent care facility only eight days post-vaccination. *Kuhn*, 2020 WL 3750994, at *2. Like the Petitioner in this case, the *Vinocur* delayed seeking treatment for more than four months and suffered his SIRVA injury for a similar overall duration. *Vinocur,* 2020 WL 1161173, at *12-14. However, when he sought treatment, his pain and reduced ROM were significant, and he was diagnosed with adhesive capsulitis. *Id.* at *13. The *Knauss* petitioner also exhibited more significant limitations in ROM, as well as a SIRVA Injury which lasted several months longer than Petitioner's.[10] *Knauss,* 2018 WL 3432906, at *2-4.

Instead, I find the *Rayborn* case – in which petitioner was awarded $55,000.00 - offers the best comparison to the facts and circumstances in this case.[11] Both cases involved relatively young petitioners – in their thirties, who initially delayed seeking treatment for several months and suffered a SIRVA injury for less than one year – approximately eight to nine months. *Rayborn,* 2020 WL 5522948, at *11-12. However, the *Rayborn* petitioner suffered more significant limitations in ROM. For example, that petitioner experienced 85 degrees of active abduction compared to Petitioner's 160

---

[10] Additionally, the *Knauss* case – decided more than four years ago by one of my colleagues, involved a much older individual who suffered prior shoulder pain and degenerative joint disease. *Knauss,* 2018 WL 3432906, at *2-4. Thus, any meaningful comparison with the Petitioner in this case – a healthy 31-year-old at the time of vaccination, is difficult.

[11] *Rayborn v. Sec'y of Health & Hum. Servs.,* No. 18-0226V, 2020 WL 5522948 (Fed. Cl. Spec. Mstr. Aug. 14, 2020).

degrees. *Id.* at *12. Thus, I will award Petitioner a slightly lower pain and suffering amount - $50,000.00.

## Conclusion

For all the reasons discussed above and based on consideration of the entire record, **I find that Petitioner's right shoulder injury meets the definition for a Table SIRVA. Thus, causation is presumed, and Petitioner is entitled to compensation in this case. Furthermore, I find that $50,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.[12]**

**I therefore award Petitioner a lump sum payment of $50,000.00, in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a) of the Vaccine Act. *Id.*

This amount represents compensation for all damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this Decision.[13]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[12] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[13] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.